```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                      ALBANY DIVISION
LOLA MOSES,                    :
                               :
     Plaintiff,                :
                               :
vs.                            :    CIVIL ACTION
                               :    FILE NUMBER_____
ANDREW COLLEGE LINDA BUCHANAN  :
IN HER CAPACITY AS PRESIDENT   :
OF ANDREW  COLLEGE AND AS AN   :
INDIVIDUAL; JULIE CADLE IN HER :
CAPACITY AS CHIEF FINANCIAL    :
OFFICER FOR ANDREW  COLLEGE    :    JURY TRIAL DEMANDED
AND AS AN INDIVIDUAL           :
                               :
Defendants.                    :
_____:
```

## PLAINTIFF'S COMPLAINT

COMES NOW Plaintiff, by and through her attorney, and shows this Honorable Court the following:

I.

## JURISDICTION AND VENUE

1.

This action is brought pursuant to Title VII of Civil Rights Act of 1964, codified at 42 U.S.C. § 2000-e ("Title VII"), the Civil Rights Act of 1866, codified at 42 U.S.C. § 1981 ("§ 1981"), all as amended by the Civil Rights Act of 1991, to redress Plaintiff's rights to be free from race discrimination and retaliation under the United States Constitution, and Georgia state law.  The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

2.

Venue lies in this Court under 28 U.S.C. § 1391(b) and this cause resides in the Albany Division of this Court because a party to this action either resides in and/or has an office located within the boundaries of this judicial district.  Moreover, the unlawful employment practices alleged below were committed in the Middle District of the State of Georgia.

II.

## **PARTIES**

3.

Plaintiff, Lola Moses, is a black female at all times relevant to this Complaint and is a resident of the Middle District of Georgia residing in Dawson, Terrell County, Georgia. Plaintiff is a 1983 graduate of Terrell County High School in Dawson, Terrell County, Georgia. Plaintiff was at all times relevant hereto, an employee of the Andrew College.

4.

At all times relevant to this Complaint, Defendant Andrew College, (hereinafter **"Andrew"**) is  a private liberal arts college located in the Middle District of Georgia. This facility is located, and the department is doing business, within this judicial district.  At all times relevant to this complaint, **Andrew** has employed in excess of 15 employees. The defendant **Andrew** may be served through its registered agent for service of process, Linda

Buchanan, 501 College Street, Cuthbert, Georgia 39840.

5.

At all times relevant to this Complaint, Defendant Linda Buchanan, (hereinafter **"Buchanan"**) was the president of **Andrew** and residing within this judicial district. **Buchanan** was charged with the duties of president of **Andrew** and with basically operating the institution as its chief executive officer. **Buchanan** is being sued as an employee of **Andrew** and as an individual.

6.

The defendant **Buchanan** who at all times material hereto was a duly employed employee of the **Andrew**, and she is the president of the college. She participated in the discrimination against Plaintiff; the harassment and retaliation against Plaintiff for engaging in protected activity; and the decision to terminate Plaintiff's employment.

7.

At all times relevant to this Complaint, Defendant Julie Cadle, (hereinafter **"Cadle"**) is the chief financial officer of **Andrew** and residing within this judicial district. **Cadle** was charged with the duties of chief financial officer and supervising employees such as Plaintiff. **Cadle** is being sued as an employee of **Andrew** and as an individual.

8.

The defendant **Cadle** who at all times material hereto was a duly employed employee of the **Andrew**, and she was the chief financial officer of the college. She participated in the discrimination against Plaintiff; the harassment and retaliation against Plaintiff for engaging in protected activity; and the decision to terminate Plaintiff's employment.

III.

## GENERAL ALLEGATIONS

9.

Plaintiff began her employment with the defendant **Andrew** on or about February 21, 2000. Plaintiff received an Associates Degree in Science from Darton College in Albany, Georgia in 1996. Plaintiff received a Bachelors Degree on Business Administration from Georgia Southwestern State University in 1998. Plaintiff received a Master Of Business Administration Degree from Georgia Southwestern State University in 2010. Prior to the discrimination, retaliation, and harassment against her, Plaintiff had always performed her duties in a satisfactory manner and Plaintiff's evaluations reflected a ranking of exceptional performance or exceeds expectations. Plaintiff received numerous promotions and pay raises as a result of her job performance prior to the discrimination. Plaintiff was also made a member of the benefits committee for the college. Plaintiff received numerous recognitions and awards and Plaintiff

was named Outstanding Staff Member by **Andrew** during the 2010-2011 year.

10.

Plaintiff worked her way up the ranks at **Andrew.** Plaintiff received promotions to the positions of Bursar, Director of Human Resources, and finally to Controller. Prior to receiving the position of Controller, Plaintiff was told that she could not apply for the position. The defendants consider two (2) white females for this position, and after these two (2) white females could not receive this position, Plaintiff was told that she could apply for the position. One of the white females consider for the position did not meet the minimum qualifications for the position.

11.

Plaintiff performed some of the duties of the Controller when she held the positions of Bursar and Director of Human Resources. Plaintiff began the position of Controller on or about March 1, 2017. Once she received this position, Plaintiff did not have the same access to information and documents as white individuals had in the position. After Plaintiff received this position, all of the supervisory authority of this position over other employees were changed so that Plaintiff would not supervise the employees in the department. After Plaintiff received the position, there were constant attempts to subordinate her to white employees and to take away any and all supervisor duties that she had over white

employees. Plaintiff complained that she was treated less favorable than white employees.

12.

During her employment, Plaintiff had continuously complained about this discrimination and being treated differently from white employees. While Plaintiff was Controller, she faced numerous acts of retaliation and harassment.

13.

The defendants also took actions against Plaintiff that they thought would cause Plaintiff to quit her job. However, Plaintiff did not quit her job so the defendants put more pressure on Plaintiff.  On or about October 26, 2018, the defendants demoted Plaintiff from her position of Controller while reducing her salary. The defendants also reassigned portions of Plaintiff's job duties which included duties that were listed in the job description of other employees as duties that they were supposed to be performing.

14.

After Plaintiff was demoted, she filed a complaint of discrimination with the defendants and she filed a charge of discrimination against the defendants. Plaintiff was subjected to numerous acts of harassment and retaliation.  Plaintiff was demoted and terminated. The defendants used their efforts to discredit Plaintiff's work, and to undermine Plaintiff's authority

with the workers whom Plaintiff supervised. Plaintiff was written-up for activities that other employees have not been written-up for, and Plaintiff was treated differently from similarly situated white employees. Plaintiff was denied access to a computer program that she needed to do her work. Plaintiff was denied training with regard to her work. Also, white employees were provided with consultants to assist them with the performance of their work. White employees were allowed to attend training, but Plaintiff was told that she could not attend training because the funds were not available. Plaintiff was also subjected to an unequal application of work rules and disciplined differently from similarly situated white employees. Plaintiff was subjected to a very hostile work environment, and based on Plaintiff's observation and experience, the defendants have a policy and pattern of treating black employees less favorable than white employees.

15.

Prior to, and after, the occurrence of the events in this lawsuit, Plaintiff had complained about the discriminatory practices and policies of defendants and according to the policies and procedures of defendants, Plaintiff was not supposed to be subjected to any harassment and/or retaliation for utilizing defendants' policies and procedures. Plaintiff had discussed the discriminatory treatment and harassment with her supervisors at **Andrew.** Plaintiff complained to the Human Resources Director and

she was told not to let **Cadle** and other office employees abuse, manipulate and purposely overwork her. Plaintiff was told to leave at 4:30 p.m., the end of work, like the other employees rather than working until after 5:00 p.m. Plaintiff's had some many job duties placed upon her that it was impossible for Plaintiff to complete her job duties during the regular work day so that Plaintiff had t6o work late into the night on many occasions. Plaintiff could hardly take a lunch break. **Cadle** and other would spy on Plaintiff and look through Plaintiff's personal belongings, and they would also constantly interfere with Plaintiff's performance of her job duties. Plaintiff's lunch schedule was changed on many occasions to keep her office schedule with the performances of her job duties.

16.

Plaintiff did not quit even after she was demoted, and the discrimination and retaliation against Plaintiff continued. Plaintiff filed a grievance alleging discrimination with the Human Resources Director. The Human Resources Director conveyed my grievance to Cadle and the president. Cadle thereafter retaliated against Plaintiff in the presence of the Human Resources Director and other employees. After Plaintiff was demoted, the defendants did bring into Plaintiff's department a consultant. However, the defendants lied to Plaintiff about the purpose of the consultant. After the consultant had left Plaintiff's department, the defendants would not allow Plaintiff to review the reports of the

consultant. Therefore, Plaintiff was left with the understanding that the sole reason for the consultant was to discover information to terminate her employment. A short period after the consultant left Plaintiff's department, Plaintiff was indeed terminated. The actions taken by the defendants did not cause Plaintiff to quit her job so the defendants finally summoned the courage to fire Plaintiff. The defendants terminated Plaintiff's employment on or about April 3, 2019. Plaintiff was replaced by a white female.

17.

But for the fact of Plaintiff's status as a black female, Plaintiff would not have been demoted and then terminated. Plaintiff would not have been retaliated against, and subjected to such harassment. The defendants' actions in subjecting Plaintiff to race discrimination and retaliation constitute unlawful discrimination in violation of Title VII and § 1981.

18.

This unwelcomed race discrimination against Plaintiff unreasonably interfered with Plaintiff's right to enter into a contract, affected the terms, conditions and privileges of her employment and further created a hostile, abusive, offensive and intolerable working environment for her.

19.

As of the date of this Complaint, Plaintiff had not been reinstated to her former position of employment.

20.

At all times relevant to this Complaint, **Buchanan**, **Cadle** and other employees of **Andrew**, were the alter-egos of Defendant **Andrew** and, as such, **Andrew** had actual and/or constructive knowledge of the unlawful race discrimination and retaliation perpetrated upon Plaintiff.

21.

**Andrew**, **Buchanan**, and **Cadle** did not take sufficient action to formulate and implement policies to prevent discrimination against the class of persons to whom Plaintiff belongs.

22.

As such, by failing or refusing to formulate and implement policies to prevent said discrimination, **Andrew** created and perpetuated a de facto policy of allowing, condoning, and ratifying such unlawful and discriminatory conduct in the workplace, and in so doing, acted with malice or reckless indifference to Plaintiff's federally protected rights.

23.

**The defendants'** reasons for harassing, retaliating against, and terminating Plaintiff's employment were purely pretextual and otherwise discriminatory in nature.

24.

On November 21, 2018, Plaintiff filed an Employment Discrimination Complaint with the Equal Employment Opportunity

Commission ("EEOC") referencing race discrimination and retaliation in employment.  A true and correct copy is attached hereto as Exhibit "A".

25.

On or about August 26, 2020, the EEOC issued a Notice Of Right To Sue letter to Plaintiff which Notice was received by Plaintiff after August 26, 2020, authorizing Plaintiff to proceed with a civil action.  A true and correct copy is attached hereto as Exhibit "B" of this Complaint.

26.

On May 21, 2019, Plaintiff filed an Employment Discrimination Complaint with the Equal Employment Opportunity Commission ("EEOC") referencing race discrimination and retaliation in employment.  A true and correct copy is attached hereto as Exhibit "C".

27.

On or about August 26, 2020, the EEOC issued a Notice Of Right To Sue letter to Plaintiff which Notice was received by Plaintiff after August 26, 2020, authorizing Plaintiff to proceed with a civil action.  A true and correct copy is attached hereto as Exhibit "D" of this Complaint.

## COUNT I

28.

The defendants' actions in subjecting Plaintiff to race discrimination and retaliation constitute unlawful discrimination

in violation of Title VII. This claim is brought against **Andrew** as there is no individual liability under Title VII although **Andrew** is responsible for the acts and/or omissions of its employees.

<u>**COUNT II**</u>

29.

The defendants' actions in subjecting Plaintiff to race discrimination and retaliation constitute unlawful intentional discrimination in the making and enforcement of a contract in violation of 42 U.S.C. § 1981. This claim is brought against the defendants **Andrew**, **Buchanan** and **Cadle** in their positions and employees of **Andrew** and as individuals.

30.

As a result of the unlawful actions of the defendants, Plaintiff has suffered emotional pain, mental distress, inconvenience, mental anguish, loss of enjoyment of life, loss of income, and benefits of employment. Defendants have acted with actual malice and the intent to harm Plaintiff.

31.

As a direct and proximate result of **Andrew**, **Buchanan's**, and **Cadle's** knowledge, condonation, and ratification of its race discrimination and retaliation against Plaintiff, Plaintiff has lost past and future wages and benefits and has otherwise suffered mental anguish, emotional harm and distress, humiliation, embarrassment and physical discomfort.

32.

Upon information and belief, the aforesaid customs, policies, practices, and systemic deficiencies of **Andrew** arose through the conscious decisions and/or deliberate indifference of the College and the policy makers and final decision-makers, including but not limited to, **Buchanan** and **Cadle**.

## COUNT III

33.

**Buchanan** and **Cadle**'s actions in interfering with Plaintiff's employment relationship constitute tortious interference with employment relationship under Georgia law. The defendant **Andrew** is responsible for the acts and/or omissions of its employees through the doctrine of respondeat superior under Georgia law.

34.

The defendants have wilfully and wantonly disregarded Plaintiff's rights, and the defendants' actions against Plaintiff were undertaken in bad faith.

35.

As a result of the unlawful actions of the defendants, Plaintiff has suffered emotional pain, mental distress, inconvenience, mental anguish, loss of enjoyment of life, loss of income, and benefits of employment.

**COUNT IV**

36.

**Buchanan** and **Cadle's** actions in failing to provide Plaintiff with a work place free of discrimination and retaliation violates Georgia law. The defendant **Andrew** is responsible for the acts and/or omissions of its employees through the doctrine of respondeat superior under Georgia law.

**COUNT V**

37.

The defendants knew or should have reasonably known that as a result of the aforementioned egregious and outrageous conduct Plaintiff would be subjected to severe mental and emotional distress, pain and suffering. The defendants acted intentionally, wilfully, maliciously and purposely, with the intention to inflict emotional distress upon Plaintiff, or with reckless disregard of the probability of causing Plaintiff emotional distress.

38.

The aforementioned conduct of the defendants constitute intentional infliction of emotional distress, and as a result of these acts, Plaintiff has suffered severe and grievous emotional distress, anxiety, nervousness, humiliation, pain and suffering, and physical manifestations thereof. By intentionally inflicting emotional distress upon Plaintiff, **Buchanan**, and **Cadle** have violated Georgia law, and are liable to Plaintiff for compensatory

*14*

damages, damages for pain and suffering, and punitive damages. The defendant **Andrew** is responsible for the acts and/or omissions of its employees through the doctrine of respondeat superior under Georgia law.

39.

**Andrew**, **Buchanan**, and **Cadle** are liable to Plaintiff for compensatory damages and attorney's fees under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and 42 U.S.C. § 2000-e, for causing Plaintiff to be deprived of her federal constitutional rights.

WHEREFORE, Plaintiff demands judgment against the defendants for back pay, front pay, lost employment benefits, compensatory damages, punitive damages, attorney's fees and costs and other such relief as this Court deems just and equitable.

WHEREFORE, Plaintiff demands a TRIAL BY JURY and prays that this Honorable Court:

a) adjudge the defendants to have engaged in unlawful employment discrimination and retaliation in violation of Title VII and § 1981;

b) adjudge the defendants to have engaged in employment discrimination and retaliation in the making and enforcing of contracts in violation of § 1981;

c) award Plaintiff compensatory damages for the violation of her statutory and constitutional rights and breach of contract in an amount to be determined by the enlightened conscience of the

jury, including damages for loss of income, emotional distress, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

d) award Plaintiff punitive damages for the unlawful intentional discrimination against them and to deter the conduct of the defendants pursuant to federal and state law punitive damages statutes;

e) award Plaintiff the Controller's position, and reinstate her employment;

f) award Plaintiff costs of this action and her reasonable attorneys' fees under 42 U.S.C. § 1988 and 42 U.S.C. § 2000-e, including interim and final attorney's fees;

g) award Plaintiff injunctive relief to prevent defendants from discriminating against her, and retaliating against her; and

h) award Plaintiff such further relief, equitable or legal, that this Court may deem just and proper.

This the 20th day of November, 2020.

RESPECTFULLY SUBMITTED,

THE LAW OFFICES OF MAURICE LUTHER KING, JR.,P.C.

BY: /s/Maurice Luther King, Jr.
     MAURICE LUTHER KING, JR.
     ATTORNEY FOR PLAINTIFF
     STATE BAR NO. 421145

POST OFFICE BOX 72071
ALBANY, GEORGIA 31708-2071
(229) 639-0619